IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DEBRA KEYS**                                                                                                   **PLAINTIFF**

**V.**                                                        **CIVIL ACTION NO. 3:21CV113 CWR-LGI**

**KILOLO KIJAKAZI, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                                              **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Debra Keys appeals the final decision denying her applications for disability insurance benefits (DIB) and social security income (SSI). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge ("ALJ"). Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be remanded.

On July 1, 2019, Plaintiff filed disability applications alleging an onset date of December 1, 2018, due to anxiety, depression, lumbosacral spondylosis, sacrococcygeal disorders, and fibromyalgia. She was 44 years old on her onset date, with past work experience as a cashier, stocker, and sales associate. Following agency denials of her applications, the ALJ rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. She now appeals that decision.

The evidence is detailed in the memorandum briefs and the ALJ's decision, and thus, will not be repeated in depth here. As background, Plaintiff last worked at Lowe's in 2016, but stopped because of neck pain. She reported having only an eighth-grade education at the administrative hearing, despite her disability report and prior disability claim indicating she has a GED. She has five children, two of which are still minors and live with her.

At the administrative hearing, Plaintiff testified that fibromyalgia causes constant neck, back, and leg pain that prevents her from working. Medication helps for a couple of hours, but she experiences weight gain, as well as dizziness and sleepiness as side effects which can last up to an hour. The pain also severely impacts her daily activities. As a result, her husband and children perform all household chores, though she is able to prepare TV dinners and attend to her personal hygiene with their help. In a typical day, Plaintiff lies in the bed with a heating pad, while her children sit with her on their laptops. She denies watching more than 30 minutes of TV or using the computer or Facebook to pass the time. She is able to sit outside with her children twice a week while they play, and drive to Walmart once a week. But she has difficulty standing or walking more than 20-40 minutes and difficulty lifting more than three pounds. She experiences anxiety when around others.

After considering Plaintiff's testimony and subjective complaints, the ALJ concluded that the objective medical evidence did not establish that Plaintiff was

precluded from all work activity. At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At steps two and three, the ALJ found that although Plaintiff's hypertension, degenerative disc disease of the cervical and lumbar spine, mild lumbar spondylosis with mild canal stenosis, fibromyalgia, depression, anxiety, radial styloid tenosynovitis (de Quervain) left wrist, and diaphragmatic hernia were severe, they did not meet or medically equal any listing. At steps four and five, the ALJ found that Plaintiff had the residual functional capacity to perform light unskilled work except:

> The claimant is limited to work in which she would never be required to climb ladders, ropes, or scaffolds, and in which she would climb ramps and/or stairs no more than occasionally; in which she would perform no more than occasional balancing, stooping, kneeling, crouching, or crawling; in which she would not be required to perform more than occasional overhead reaching; in which she would never be required to work at unprotected heights or around dangerous moving mechanical parts. She remains capable of understanding, remembering, and carrying out short simple instructions; concentrating, persisting and maintaining pace in order to perform simple routine repetitive tasks; of occasional interaction with supervisors, coworkers, and the general public; and of adapting to routine changes in the workplace.

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she can perform work as an electronics worker, inspector and hand packager.

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal quotation marks and citation omitted). It must be more than a scintilla, but it need not be a preponderance. *Id.* In reviewing an appeal, this Court may not re-weigh the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). As the United States Supreme Court recently reiterated:

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion. *Biestek*, 139 S. Ct. at 1154 (citations and internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). This Court may not re-weigh the evidence, try the case *de novo,* or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling*, 36 F.3d at 434.

## Discussion

Plaintiff asserts that the ALJ erred in allegedly failing to incorporate all of Plaintiff's limitations into the determination of residual functional capacity and in failing to properly evaluate the medical opinions of record. The Commissioner counters that the ALJ's decision is supported by substantial evidence and complies with applicable standards. The undersigned finds no basis for reversal or remand.

### 1.

An ALJ's residual functional capacity determination is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is not a medical opinion, but an administrative finding of fact. Social Security Ruling 96–8p, *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996) n. 4). The sole responsibility for assessing a claimant's residual functional capacity rests with the ALJ, who is not required to incorporate limitations in the residual

5

functional capacity determination that he did not find to be supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)).

Plaintiff's first assignment of error is that the ALJ's residual functional capacity determination fails to incorporate all of her manipulative and mental limitations. As to the former, Plaintiff contends that despite finding that the wrist impairment in her non-dominant hand (de Quervain tenosynovitis) was a severe impairment at step two, the ALJ's residual functional capacity assessment does not include any manipulative limitations. Such limitations include handling (gross manipulation), fingering (fine manipulation), feeling, and reaching in all directions (including overhead). Though not acknowledged as a manipulative limitation in her opening brief, Plaintiff concedes in rebuttal that the ALJ's residual functional capacity determination limits her to no more than only occasional overhead reaching. However, Plaintiff maintains that the symptoms of de Quervain's tenosynovitis[2] cause grasping and pinching limitations, and the ALJ's failure to include any was prejudicial because the jobs identified by the vocational expert at step five require manipulative activities.

The record confirms Plaintiff's diagnosis for a de Quervain tenosynovitis, and its severity as determined by the ALJ, but it is neither the presence nor the history of a medical condition that establishes a disability, but rather its limitations. *Bordelon v.*

---

[2] De Quervain's tenosynovitis is a condition affecting the tendons on the thumb side of the wrist. It can cause pain and swelling at the base of the thumb and make it difficult to turn the wrist, grasp anything or make a fist. Although its cause is unknown, "any activity that relies on repetitive hand or wrist movement— such as working in the garden, playing golf or racket sports, or lifting your baby—can make it worse." *De Quervain's Tenosynovitis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/symptoms-causes/syc-20371332 (last visited June 30, 2022).

*Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those impairments). In evaluating her wrist impairment, the ALJ highlighted the following evidence:

> The claimant has been diagnosed with radial styloid tenosynovitis (de Quervain) left wrist. The medical evidence of record documents an office visit on June 18, 2019, with complaints of left wrist pain for three days, with pain and use unrelated to an injury. She reported that she woke with the pain and that she notices it when she picks up something or moves her thumb, stating that she works on a computer at home throughout the day.[3] She rated the severity of wrist pain moderate, intermittent, and of a burning character. She reported the pain as having stiffness but no swelling, paresthesia, snapping, catching, or locking. The physician examination of her non-dominant left wrist revealed joint tenderness, abnormal range of motion but no laxity, no muscle weakness, no decreased muscle tone, and her grip strength was grade 4. There was no atrophy deformity erythema swelling or ganglion. The Finkelstein's test was positive. She had intact sensation to light touch. She was diagnosed with radial styloid tenosynovitis (de Quervain] left acute, minor. She was prescribed Naproxen 500mg twice a day with food for ten days. She was advised to use an ice pack for ten to fifteen minutes three to four times a day. She was provided with a thumb spica splint and given a handout with exercises.

The ALJ goes on to note that Plaintiff did not exhibit *any* abnormal wrist findings in her consultative physical examination a few months later in October 2019. On the contrary, the examiner notes that she had "no limitations on reaching, grasping, handling, fingering and feeling." Plaintiff does not dispute this evidence, nor does she identify any other medical visit in which she subsequently complained of de Quervain's tenosynovitis or other wrist symptoms in the record.

---

[3] The undersigned notes that the computer activity directly contradicts Plaintiff's hearing testimony.

A medical condition that can be reasonably remedied by surgery, treatment or medication is not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). For pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). A claimant's failure to seek treatment is also a relevant factor to consider in determining the severity of an impairment and may be used to discount complaints of disabling pain or other limitations. *Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005); *Anthony*, 954 F.2d at 295; *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). That Plaintiff did not seek treatment for de Quervain's tenosynovitis after taking a ten-day prescription and applying ice, undermines her claim that she was prejudiced by the ALJ's failure to include additional manipulative limitations. Moreover, no examining or treating physician of record assigned grasping or pinching limitations, or any physical limitations for that matter. Plaintiff also did not complain of wrist pain or other wrist-related symptoms during her administrative hearing testimony. *See McKinney v. Kijakazi*, No. 4:20-CV-01530-DCC, 2021 WL 3163763, at *2 (D.S.C. July 27, 2021) (concluding that "it would be senseless to vacate and remand for reconsideration" where there is no evidence that Plaintiff's de Quervain's tenosynovitis or other wrist symptoms caused any functional restrictions) (citation omitted); *Bonvillain v. Berryhill*, No. 1:18-CV-978 (TCB), 2019 WL 1232840, at *13 (E.D. Va. Mar. 15, 2019) (Plaintiff's near-perfect grip strength, ability to manage pain with medication, and inconsistent subjective testimony counseled

strongly against imposing any additional functional limitations for de Quervain's tenosynovitis).

Given the evidence as stated, the undersigned submits that the ALJ did not reversibly err in accounting for only those limitations for which there was continuing evidentiary support.

**2.**

Plaintiff also contends that the ALJ's mental residual functional capacity determination fails to fully account for her limitations caused by anxiety and depression. Because this argument relates to her second point of error—that the ALJ erred in failing to properly evaluate the mental health opinions of record—the undersigned addresses them together.

At step two of the sequential evaluation, ALJs must rate the degree of functional limitation caused by mental impairments pursuant to criteria in "paragraph B" of the Listings for mental disorders in four broad categories: understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; and, adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C. Plaintiff argues that the ALJ's finding that she had *no* limitations in these areas was not only inconsistent with her severity finding at step two, but inconsistent with the agency psychologist's assessment that she was moderately limited in all four "paragraph B" areas. However, as noted by the ALJ, the "paragraph B" assessment is not a residual functional capacity assessment; rather, it is used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation. SSR 96-8p,

*Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, at *4 (S.S.A. July 2, 1996). By way of comparison, the "mental RFC assessment used at steps 4 and 5 of the sequential evaluation requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph[ ] B . . . ." *Id.* at 6. Thus, even if the ALJ erred in finding that Plaintiff had no limitations in the "paragraph B" areas, the ALJ did not dismiss Plaintiff's mental impairments based on severity at step two. She proceeded with the sequential analysis and her subsequent mental residual functional capacity finding as set forth herein, is consistent with the record as a whole, including the agency psychologist's residual functional capacity assessment and her treating sources' opinion.

As noted earlier, the ALJ found that Plaintiff had the mental residual functional capacity to understand, remember, and carry out short simple instructions; concentrate, persist, and maintain pace in order to perform simple routine repetitive tasks; occasionally interact with supervisors, coworkers, and the general public; and adapt to routine changes in the workplace. In making this finding, the ALJ considered the supportability and consistency of the medical opinions and prior administrative findings of record in compliance with 20 C.F.R. § 404.1520c(a) (2017), which no longer require ALJs to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." Rather, supportability and consistency of medical opinions or prior administrative findings are "the most important factors" to be considered when evaluating the persuasiveness of medical opinions. But an ALJ is free

to assign little or no weight to the opinion of any physician when the physician's statements are brief and conclusory, are not supported by medically acceptable clinical laboratory diagnostic techniques or are otherwise unsupported by the evidence. *Bayer v. Colvin*, 557 F. App'x 280, 287–288 (5th Cir. 2014) (citations omitted).

  Relevant here, the agency psychologist opined that Plaintiff had moderate limitations in several areas of mental functioning, *i.e.,* in carrying out detailed instructions and in maintaining concentration for extended periods of time, but she also noted that Plaintiff was "not significantly limited" in several other areas, including her ability to understand, remember and carry out simple instructions. In fact, the psychologist concluded that Plaintiff not only had the mental residual functional capacity to understand and carry out instructions and adequately maintain attention and concentration for 2-hour periods, but she could also complete a normal work week without excessive interruptions from psychological symptoms and could interact appropriately with coworkers and supervisors on a limited basis and adapt to a job setting. The ALJ found the agency psychologist's conclusions in this regard to be supported by and consistent with the longitudinal evidence of record.

  The ALJ did not, however, find the treating sources' opinion that Plaintiff "struggles with concentration and memory issues," to be persuasive because she found it to be inconsistent with their treatment records routinely showing that Plaintiff's memory and concentration were intact. Plaintiff does not challenge this observation but cites to the memory deficits she exhibited during her consultative psychological examination. That the ALJ did not discuss these deficits in the context of finding the consultive

psychological examiner's opinions persuasive is puzzling, but not reversible error. The Fifth Circuit has long declined to impose "formalistic rules" requiring an ALJ to engage in an exhaustive discussion of every piece of evidence. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). The ALJ's overall finding was that the examiner's findings were consistent with the other medical evidence of record concerning Plaintiff's diagnosis and treatment for depression, *i.e.*, that her moderate severe depression would require continued medication. The undersigned notes further that although the ALJ deemed them unpersuasive, the treating source opinions were consistent with the agency psychologist's assessment in many respects. All experts agreed that Plaintiff was more limited in her ability to carry out *detailed* instructions or concentrate for *extended* periods of time, but she was not significantly limited in her ability to understand, remember and carry out short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; and respond appropriately to changes in a routine work setting. [4] Such is consistent with the ALJ's residual functional capacity finding.

In the end, Plaintiff's "argument comes down to the weight the ALJ places on [these opinions]—and it is the ALJ's task, not ours, to weigh evidence." *Garcia v. Colvin*, 622 F. App'x 405, 408–409 (5th Cir. 2015) (unpublished). Plaintiff's discontent

---

[4] Though not argued in her initial brief, Plaintiff asserts that merely limiting her to "simple work" short, simple instructions and routine repetitive tasks does not adequately address her limitations in concentration, persistence, or pace. The undersigned notes that generally, "issues raised for the first time in a reply brief are waived." *Foster v. Thaler*, 369 F. App'x 598, 603 (5th Cir. 2010) (citation omitted). Contrary to Plaintiff's assertions, the limitation to simple work and instructions has been found to adequately incorporate even moderate limitations in concentration, persistence and pace. *Bordelon*, 281 F. App'x 418 (unpublished) (restrictions to one-to-two step instruction reflect that the ALJ reasonably incorporated the plaintiff's moderate concentration, persistence and pace limitations).

with the ALJ's residual functional capacity determination does not mean that "any reasonable adjudicator would be compelled to conclude to the contrary." *Hollinger v. Kijakazi*, No. 20-61103, 2021 WL 3775376, at *2 (5th Cir. Aug. 25, 2021) (quoting *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692, 207 L. Ed. 2d 111 (2020)).  It is the sole responsibility of the ALJ to interpret the medical evidence to determine a claimant's residual functional capacity for work.  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).  Based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability.  Substantial evidence supports the ALJ's decision.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended,

effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on July 6, 2022.

<u>s/ LaKeysha Greer Isaac</u>
UNITED STATES MAGISTRATE JUDGE
