**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**DEBRA KEYS**                                                    **PLAINTIFF**

**V.**                                              **CAUSE NO. 3:21-CV-113-CWR-LGI**

**KILOLO KIJAKAZI, ACTING**                          **DEFENDANT**
**COMMISSIONER OF SOCIAL**
**SECURITY**

## ORDER

Plaintiff Debra Keys brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of her claim for Disability Insurance Benefits and Supplemental Security Income. On July 6, 2022, the United States Magistrate Judge issued a Report and Recommendation affirming the SSA's decision. The plaintiff objected to that Recommendation, and that objection is now before the Court.[1]

As explained below, the Court finds that the ALJ's analysis of Keys' physical Residual Functional Capacity (RFC) is supported by substantial evidence, but that the ALJ failed to properly analyze the medical opinions of the State agency consultants and the plaintiff's treating physician with respect to Keys' mental RFC. Therefore, the Court REMANDS the case to the SSA for further proceedings consistent with this Order.

### I.      Factual and Procedural History

Debra B. Keys is a 48-year-old woman whose highest level of education is the eighth grade. She has been out of work since 2016, when her doctor ordered her to stop working on account of

---

[1] On July 22, 2022, counsel for the plaintiff filed an unopposed motion for an extension of time, Docket No. 15, as well as the plaintiff's objection to the R&R, Docket No. 17. In the accompanying memorandum, counsel explained that he was recovering from an illness as the basis for the request for extension. Docket No. 16 at 2. This constitutes good cause for an extension. The Court therefore grants the motion *nunc pro tunc*.

some "abnormal MRIs." Docket No. 8 at 617. Prior to that time, she worked intermittently as a sales clerk, store laborer, and steam table attendant.

On July 1, 2019, Keys filed a claim for Disability Insurance Benefits ("DIB") and an application for Supplemental Security Income ("SSI"). Her claims were denied on November 18, 2019, so she filed for reconsideration. Her claims were again denied on December 6, 2019. One week later, Keys submitted a written request for a hearing before an Administrative Law Judge ("ALJ").

On May 14, 2020, the ALJ held a telephonic hearing. The ALJ sent Keys a notice of unfavorable decision on June 2, 2020. While the ALJ found that Keys has no shortage of "severe impairments," including "hypertension, degenerative disc disease of the cervical and lumbar spines, mild lumbar spondylosis with mild canal stenosis, fibromyalgia, depression, anxiety, radial styloid tenosynovitis (de Quervain) left wrist, and diaphragmatic hernia," Docket No. 8 at 31, the ALJ concluded that Keys' claim fails "[b]ased on the testimony of the vocational expert . . . that the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 46-47. The ALJ therefore found Keys not disabled and denied her claims.

Keys appealed the decision to the Appeals Council. In a letter dated December 22, 2020, the Appeals Council denied Keys' request for review, provided notice that the denial constituted a final agency action, and informed Keys of her right to file a civil action to challenge the decision. *See id.* at 5-7.

Keys filed this lawsuit on February 11, 2021. On July 6, 2022, United States Magistrate Judge LaKeysha Greer Isaac issued a Report and Recommendation ("R&R") concluding that there was no reason to disturb the ALJ's decision. Docket No. 14.

## II.     Legal Standard

To be eligible for DIB and SSI, a claimant must prove that she has a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Under that definition, a person is disabled if she suffers physical and/or mental impairments that are both "medically determinable" and severe enough to prevent her from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

The Social Security Administration follows a five-step sequence to evaluate claims of disability. Docket No. 8 at 25-26 (citing 20 C.F.R. § 404.1520). It considers whether (1) the claimant is currently engaged in substantial gainful activity, (2) the claimant has a severe impairment, (3) the identified impairment meets or equals the severity of a listed impairment in Appendix 1 of the Regulations, (4) the impairment prevents the claimant from performing past relevant work, and (5) the impairment prevents the claimant from doing any other work. *Id*. "The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).

This Court's review of an adverse decision by an ALJ is limited to two questions: "(1) whether there is substantial evidence in the record to support the decision and (2) whether the decision comports with relevant legal standards." *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Where, as here, a claimant alleges that the Commissioner's decision is not based upon substantial evidence, the reviewing court asks whether the Commissioner relied on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)

(citations and quotations omitted). But "[t]his does not mean [the reviewing court] affirm[s] on gossamer." *Anderson v. Schweiker*, 651 F.2d 306, 308 (5th Cir. 1981). In reviewing a substantial evidence challenge, the Court must "consider the record as a whole," not merely "the isolated bits of evidence which support the Secretary's decision." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). While a court may not reweigh the evidence or try the issues *de novo*, its examination of the record must include "whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

## III.   Discussion

Keys maintains that the ALJ's decision is not based on substantial evidence. Specifically, Keys challenges the ALJ's failure to incorporate limitations related to her physical and mental conditions in the ALJ's RFC analysis. As it relates to her physical condition, Keys argues that the Commissioner erred in not including "limitations [pertaining to de Quervain's syndrome][2] into the RFC determination." Docket No. 17 at 4. As it relates to her mental condition, Keys argues that "the ALJ's failure to consider the specific limitations reported by the State Agency medical consultant constitutes a failure to consider medical opinion evidence." Docket No. 17 at 7.

This Court reviewed the record to determine whether the Commissioner's decision meets the substantial evidence standard on both challenges. The Court now finds that the ALJ's decision is supported by substantial evidence as to Keys' physical conditions, but not her mental conditions.

First, Keys challenges the ALJ's failure to incorporate limitations related to her de Quervain's syndrome into the RFC. Docket No. 17 at 5. "Having recognized [] that de Quervain's

---

[2] De Quervain's Syndrome is a painful swelling (inflammation) of specific tendons that run along the thumb side of the wrist and attach to the base of the thumb. It often results from overuse, direct injury, or even arthritis. *De Quervain tenosynovitis*, MAYO CLINIC (Aug. 4, 2022), https://www.mayoclinic.org/diseases-conditions/de-quervain-tenosynovitis/symptoms-causes/syc-20371332.

tenosynovitis is a severe impairment," Keys argues, the ALJ erred in "fail[ing] to include such limitations into her RFC determination." Docket No. 10 at 5. The Commissioner responds that the ALJ's RFC determination is consistent with the medical evidence, which contained "no significant conflicts" with respect to Keys' physical condition. Docket No. 12 at 7.

The United States Magistrate Judge agreed with the ALJ, finding that "no examining or treating physician of record assigned grasping or pinching limitations, or any physical limitation for that matter" to Keys' nondominant left wrist. Docket No. 14 at 8. "On the contrary," the R&R notes, the record shows that Keys "had no limitations on reaching, grasping, handling, fingering, or feeling." Docket No. 14 at 7 (internal quotations omitted). As a result, the Magistrate Judge submits that "the ALJ did not reversibly err in accounting for only those limitations for which there was continuing evidentiary support." *Id*. at 14.

The Court adopts the Magistrate Judge's recommendation with respect to the ALJ's determination of Keys' physical RFC. Under step three of the five-step sequential evaluation, the ALJ found that Keys' de Quervain's syndrome, alongside her other impairments, "significantly limit[s] [her] ability to perform work activities as required by SSR. 85-28." Docket No. 8 at 31. It was Keys' responsibility, however, to supply record evidence further elucidating the limitations of her impairment. The Fifth Circuit has long held that "[t]he mere presence of some impairment is not disabling per se. Plaintiff must show that she was so functionally impaired . . . that she was precluded from engaging in any substantial gainful activity." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

Keys failed to supply the necessary evidence here. The Court finds that, for the reasons outlined in the ALJ's decision and the Magistrate Judge's R&R, the ALJ's RFC analysis of Key's de Quervain's syndrome is supported by substantial evidence, as that term is defined in this Circuit.

*See Boyd*, 239 F.3d at 704 ("Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance.").

Next, Keys challenges the ALJ's conclusions regarding her mental health conditions. She points to the ALJ's finding of "no limitations in assessing the 'paragraph B' criteria with regard to Plaintiff's severe impairments of depression and anxiety," despite findings by the State Agency medical consultants "that the Plaintiff was moderately limited in all 4 of such criteria."[3] Keys further contends that "the ALJ's failure to consider the specific limitations reported by the State agency medical consultant constitutes a failure to consider medical opinion evidence." *Id.* at 7. The Court agrees.

In adjudicating a claim of disability, the ALJ is not permitted to "substitute his lay opinion for the medical opinion of experts." *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018) (citations omitted). Even when medical opinions in the record conflict, which the Commissioner does not dispute is the case here, Docket No. 12 at 9-12, "the Commissioner must 'weigh the relevant evidence' and *explain her reasons* for rejecting one medical opinion as less credible than another." *Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018) (emphasis added) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017)). These principles are "especially profound" when the case involves a mental disability. *Salmond,* 892 F.2d at 818.

The State agency medical consultants and Keys' treating physician found that Keys was "moderate[ly]" or "seriously limited" in each of the four "paragraph B" criteria. *See* Docket No. 8 at 149, 642-43 In each case, the examining or treating physician provided written comments on the patient's "moderate limitations in overall psychological functioning," Docket No. 8 at 149, or

---

[3] Those categories were the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. Docket No. 8 at 149.

her "struggle[] with concentration or memory issues." Docket No. 8 at 643. The medical evaluations of the consultative and treating physicians were not mere "form reports" or "check-list assessments" that the ALJ was permitted to overlook. *Cf. Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). But there is no indication in the ALJ's decision that she weighed these considerations when determining the Keys' mental RFC.

Additionally, the ALJ erroneously disregarded medical expert opinion in weighing the severity of Keys' mental impairments. Reviewing disparate "subjective complaints" from various points in Keys' medical history, the ALJ found that Keys' "impairment related symptoms have not been as severe or limiting as have been alleged by the claimant." Docket No. 8 at 41-42. But the ALJ cites no affirmative medical evidence supporting this finding. On the other hand, the opinions of the medical experts (both consulting and treating) directly contradict such a finding. For example, Dr. Prosser's November 2019 evaluation noted that Keys' "Depressive, Bipolar and Related Disorders" were "Severe," *id.* at 140, and that her "statements about the intensity, persistence, and functionally limiting effects of the symptoms" were "substantiated *by the objective medical evidence alone*." *Id.* (emphasis added). Similarly, the treating physician, Jessica Curry, found that Keys was "unable to meet competitive standards" with regard to her ability to "complete a normal workday or workweek" or "deal with normal work stress," and was "seriously limited" in numerous other basic functions. *Id*. at 639-40.[4] Even the consultative psychological

---

[4] The ALJ "did not find the opinion of Ms. Curry to be persuasive" because Curry's findings related to Keys' "struggles with concentration and memory issues" are "not consistent with Keys' mental health care provider, who routinely document [Keys'] memory and concentration as being intact." Docket No. 8 at 44 (citing B11F and B14F). The Court is puzzled by this finding, given that Curry was Keys' most frequent mental health care provider at the Weems Community Mental Health Center. The record shows that Curry treated Keys more often than any other physician at that facility, including on October 9, 2019, December 4, 2019, January 8, 2020, February 12, 2020, and March 30, 2020. Based on this evidence, Curry treated Keys at least four times before completing the *Medical Opinion Re: Ability to do Work Related Activities* on February 12, 2020. That is four times more than the consultative physicians

examiner, Dr. Whelan, whom the ALJ found persuasive, noted that Keys has a "recurrent major depressive disorder of *at least a moderate severity*." *Id*. at 618 (emphasis added).

The ALJ denied Keys' claim for benefits without contending with any of this. Instead, the ALJ deployed boilerplate assertions about Keys' statements being "not entirely consistent" with unidentified "medical and other evidence of the record." Docket No. 8 at 41; Docket No. 12 at 11. *See Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010) (finding that such language is "not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness's testimony is 'not entirely credible' yields no clue to what weight the trier of fact gave the testimony."). "Given that [State agency medical experts and the Claimant's treating physician opinions] [are] medical opinion[s], the ALJ legally erred by rejecting [them] without explanation, which resulted in an RFC not based on substantial evidence." *Kneeland*, 850 F.3d at 759.

The Commissioner counters that "the ALJ specifically discussed the State agency consultants['] assessed limitations under the 'paragraph B' criteria." Docket No. 12 at 11. But the Commissioner is unable to identify how that "discuss[ion]" factored into the ALJ's analysis or why the ALJ rejected the opinions of the medical experts. And for good reason. The ALJ's "discuss[ion]" is a mere recitation of Keys' medical history. It is devoid of any analysis or explanation as to why contrary opinions offered by the medical experts are unpersuasive or why they must otherwise be rejected. Such conclusory assertions are "beyond meaningful judicial review" and do not meet the substantial evidence threshold. *Audler v. Astrue*, 501 F.3d 446, 448–49 (5th Cir. 2007). "Just as a lower court must 'fully . . . state' all of its reasons, so too must an

---

whom the ALJ found persuasive. While Curry's medical opinion is no longer entitled to "controlling weight," *see Webster v. Kijakazi*, 19 F.4th 715 (5th Cir. 2021) (comparing 20 C.F.R. § 404.1527 (2016), with 20 C.F.R. § 404.1520c (2017)), the ALJ is still required to consider the medical source's opinion, given "the [extensive] relationship between the medical source and the claimant." 20 C.F.R. § 404.1520c (2017).

agency." *Schofield v. Saul*, 950 F.3d 315 (5th Cir. 2020) (citing *Beaumont, S. L. & W. Ry. Co. v. United States*, 282 U.S. 74, 86 (1930)).

Remand is thus appropriate. On remand, the ALJ must analyze the medical evidence with respect to Keys' mental RFC and enter a decision that is supported by that evidence. Furthermore, consistent with the law of this Circuit, the ALJ must state their reasons for rejecting contrary medical evidence.

## IV.    Conclusion

For these reasons, Keys' motion for summary judgment is granted in part and denied in part. The decision of the Acting Commissioner of the Social Security Administration is **VACATED**, and the matter is **REMANDED** for further consideration consistent with this Order. A separate Final Judgment will issue this day.

**SO ORDERED**, this the 26th day of August, 2022.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE